**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-1060 (Consolidated with No. 25-1130)**

**In the United States Court of Appeals
For the District of Columbia Circuit**

BASIN ELECTRIC POWER COOPERATIVE,
PETITIONER,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT.

On Petition for Review of an Order of the Federal Energy Regulatory Commission

**INITIAL BRIEF OF PETITIONER
BASIN ELECTRIC POWER COOPERATIVE**

Jesse Halpern
Rebecca L. Shelton
Nicole S. Allen
Anthony F. Blum
Jenna E. Cliatt
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
jhalpern@thompsoncoburn.com
rshelton@thompsoncoburn.com
nallen@thompsoncoburn.com
ablum@thompsoncoburn.com
jcliatt@thompsoncoburn.com

*Attorneys for Petitioner*

October 6, 2025

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), petitioner Basin Electric Power Cooperative ("Basin Electric") submits this Certificate as to Parties, Rulings, and Related Cases.

### A.     Parties and Amici

**1. Parties, Intervenors, and Amici before the Federal Energy Regulatory Commission**

The following parties appeared in the proceeding before the Federal Energy Regulatory Commission ("Commission") that resulted in the orders on review in the above-captioned proceeding:

Basin Electric Power Cooperative
McKenzie Electric Cooperative, Inc.
Midwest Electric Cooperative Corporation
Mountain Parks Electric, Inc.
Mountrail-Williams Electric Cooperative
Northwest Rural Public Power District
Poudre Valley Rural Electric Association, Inc.
Roughrider Electric Cooperative, Inc.
Slope Electric Cooperative, Inc.
Tri-State Generation and Transmission Association, Inc.
United Power, Inc.
Wheat Belt Public Power District

**2. Parties, Intervenors, and Amici before this Court**

The following is a list of parties, intervenors (or parties that have filed motions seeking leave to intervene), and amici appearing before this Court in the proceeding referenced above:

Basin Electric Power Cooperative
Federal Energy Regulatory Commission
Tri-State Generation and Transmission Association, Inc.
Northwest Rural Public Power District

**B.    Rulings Under Review**

Petitioner seeks review of the following orders of the Federal Energy
Regulatory Commission:

1. *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Order Denying Complaint, Docket No. EL24-93-000, 189 FERC ¶ 61,164 (December 5, 2024) (R. 21; J.A. ____); and

2. *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. EL24-93-001, 190 FERC ¶ 62,067 (February 3, 2025) (R. 25; J.A. ____).

3. *Northwest Rural Public Power District v. Basin Electric Power Cooperative*, et al., Order Addressing Arguments Raised on Rehearing, Docket No. EL24-93-001, 191 FERC ¶ 61,087 (April 29, 2025) (R. 27; J.A. ____).

**C.    Related Cases**

This case has not previously been before this Court or any other court. There are currently four related cases pending before the United States Court of Appeals for the Tenth Circuit, which involve overlapping parties and related issues: (1) *Tri-State Generation and Transmission Association, Inc. v. Federal Energy Regulatory Commission*, No. 24-9516 (10th Cir.); (2) *United Power, Inc. v. Federal Energy Regulatory Commission*, No. 24-9532 (10th Cir.); (3) *Tri-State Generation and Transmission Association, Inc. v. Federal Energy Regulatory Commission*, No. 24-

9538 (10th Cir.) (consolidated, Lead Case No. 24-9516); and (4) *Tri-State Generation and Transmission Association, Inc. v. Federal Energy Regulatory Commission*, No. 25-9522 (10th Cir.).

Each of these cases currently pending before the Tenth Circuit seek review of different agency orders than those at issue in the above-captioned proceeding. The Tenth Circuit cases address Commission orders regarding the appropriate methodology for calculating contract termination payments to be paid by members of Tri-State Generation and Transmission Association, Inc. ("Tri-State") seeking to terminate their wholesale electric service contracts with Tri-State. In the present case, Basin Electric seeks review of a Commission order denying a complaint by Northwest Rural Public Power District ("Northwest Rural") against Basin Electric and Tri-State in which the Commission arbitrarily and capriciously determined that Northwest Rural's request to withdraw from Tri-State does not breach the terms of the Eastern Interconnection Wholesale Power Contract between Tri-State and Basin Electric.

Further, the Tenth Circuit cases and the instant case arise from different Commission dockets. Specifically, the Tenth Circuit cases arise from proceedings in FERC Docket Nos. ER21-2818-000, *et al.*, while the instant proceeding arises from FERC Docket Nos. EL24-93-000 and EL24-93-001. The Commission did not consolidate the dockets underlying the Tenth Circuit cases with Docket Nos. EL24-

93-000 and EL24-93-001, in which the Commission issued the Order and Notice for which Basin Electric currently seeks review.

There are no related cases in any other court of which counsel are aware within the meaning of Circuit Rule 28(a)(1)(C).

Respectfully submitted,

/s/ *Jesse Halpern*
Jesse Halpern
Rebecca L. Shelton
Nicole S. Allen
Anthony F. Blum
Jenna E. Cliatt
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
jhalpern@thompsoncoburn.com
rshelton@thompsoncoburn.com
nallen@thompsoncoburn.com
ablum@thompsoncoburn.com
jcliatt@thompsoncoburn.com

*Attorneys for Basin Electric Power Cooperative*

Dated: October 6, 2025

iv

## RULE 26.1 DISCLOSURE STATEMENT

Basin Electric Power Cooperative ("Basin Electric") is a rural member-owned, not-for-profit electric cooperative located in Bismarck, North Dakota to which Rule 26.1 does not apply. *See* Fed. R. App. P. 26.1(a). Basin Electric has no parent corporation, no corporation owns any portion of Basin Electric, and Basin Electric is not a subsidiary or affiliate of any publicly owned corporation.

Respectfully submitted,

/s/ *Jesse Halpern*
Jesse Halpern
Rebecca L. Shelton
Nicole S. Allen
Anthony F. Blum
Jenna E. Cliatt
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
jhalpern@thompsoncoburn.com
rshelton@thompsoncoburn.com
nallen@thompsoncoburn.com
ablum@thompsoncoburn.com
jcliatt@thompsoncoburn.com

*Attorneys for Basin Electric Power Cooperative*

Dated: October 6, 2025

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ................................. i

Rule 26.1 Disclosure Statement ................................................................. v

Table Of Contents ..................................................................................... vi

Table Of Authorities ................................................................................ viii

Glossary of Acronyms and Abbreviations ............................................... xii

I.   Jurisdictional Statement ..................................................................... 1

II.  Statutes and Regulations .................................................................... 4

III. Statement of the Issues ....................................................................... 4

IV. Statement of the Case .......................................................................... 5

    A. Description of Basin Electric ........................................................... 5

    B. Basin Electric and Tri-State Are Parties to Two Wholesale Power
       Contracts. ......................................................................................... 6

    C. Tri-State Voluntarily Implemented a Contract Termination Payment
       Methodology. ................................................................................... 8

    D. Northwest Rural Complaint .......................................................... 11

V.   Standard of Review ........................................................................... 13

VI. Summary of The Argument ............................................................... 14

VII. Standing ............................................................................................ 17

    A. Basin Electric suffered an injury in fact resulting from the Orders on
       appeal. ............................................................................................. 19

       1. Basin Electric has suffered an injury in fact. ........................... 19

       2. Basin Electric's injury in fact is traceable to the Commission's
          actions in the underlying orders. ............................................. 26

       3. Basin Electric's injury in fact will be redressed by reversal of the
          Commission's underlying orders. ............................................ 27

    B. Basin Electric was not the prevailing party in the underlying
       proceeding. ..................................................................................... 28

VIII. Argument .......................................................................................... 30

A. The Commission Erred by Failing to Consider Section 9 in its Entirety. ...................................................................................31

B. The Commission's Interpretation of Section 9 is Arbitrary and Capricious. ...................................................................................36

    1. The Commission's interpretation of section 9 is inconsistent with section 14 of the Eastern Interconnection Wholesale Power Contract. ...................................................................................36

    2. The Commission's interpretation of section 9 is contrary to prior precedent. ...................................................................................39

    3. The Commission's interpretation of section 9 is inconsistent with the rules of contract interpretation. ...............................................41

    4. The Commission inappropriately disregarded evidence regarding the purpose of the Eastern Interconnection Wholesale Power Contract. ...................................................................................42

    5. Section 9 does not apply in the case of termination of the Tri-State Eastern Member Contracts ..........................................................43

C. The Commission Failed to Engage in Reasoned Decision-Making by Dismissing Applicable Precedent. ...............................................44

D. The Commission's Gamesmanship Should be Rejected. ...........................50

IX. Conclusion ...................................................................................52

Certificate of Compliance

Certificate of Service

Statutory Addendum

# TABLE OF AUTHORITIES

**Cases**

*Ala. Mun. Distribs. Grp.*,
  312 F.3d 470 (D.C. Cir. 2002) ...............................................................51

*Am. Mun. Power, Inc. v. FERC*,
  86 F.4th 922 (D.C. Cir. 2023) ................................................................24

*ANR Pipeline Co. v. FERC*,
  71 F.3d 897 (D.C. Cir. 1995) .................................................................41

*\*Ball State Univ. v. U.S.*,
  488 F.2d 1014 (Ct. Cl. 1973)..................................................................41

*\*Blake Constr. v. U.S.*,
  987 F.2d 743 (Fed. Cir. 1993) ...............................................................41

*Canadian Ass'n of Petroleum Producers v. FERC*,
  254 F.3d 289 (D.C. Cir. 2001) ...............................................................14

*City of Oberlin, Ohio v. FERC*,
  937 F.3d 599 (D.C. Cir. 2019) ......................................................... 19, 27

*Columbia Gas Transmission v. FERC*,
  448 F.3d 382 (D.C. Cir. 2006) ...............................................................35

*Crowley Caribbean Transp.*,
  37 F.3d 671 (D.C. Cir. 1994) .................................................................30

*Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*,
  No. 4:20-CV-4192-LLP, 2022 WL 1775687 (D.S.D. Apr. 11, 2022)................44

*\*Dakota Energy Coop., Inc. v. East River Elec. Power Coop., Inc.*,
  75 F.4th 870 (8th Cir. 2023)................................................... 44, 48, 49

*Exxon Mobil Corp. v. FERC*,
  35 F.3d 306 (D.C. Cir. 2003) .................................................................41

**\*Authorities upon which we chiefly rely are marked with asterisks.**

*Kansas Corp. Comm'n v. FERC*,
    881 F.3d 924 (D.C. Cir. 2018) ...............................................................19

*KeySpan-Ravenswood, LLC v. FERC*,
    348 F.3d 1053 (D.C. Cir. 2003). ........................................... 15, 31, 35

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992). ...............................................................................23

*Marlboro Elec. Coop., Inc. v. Central Elec. Power Coop., Inc.*,
    No. 4:20-cv-04386 (D.S.C. Mar. 28, 2022) .................................. 48, 49

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...................................... 13, 14, 31, 34, 35, 36, 38, 43

*Nat'l Fuel Gas Supply v. FERC*,
    468 F.3d 831 (D.C. Cir. 2006) ...............................................................35

*New England Power Generators Ass'n, Inc. v. FERC*,
    707 F.3d 364 (D.C. Cir. 2013) ....................................................... 19, 30

*PPL Wallingford Energy LLC v. FERC*,
    419 F.3d 1194 (D.C. Cir. 2005) ...........................................................14

*PSEG Energy Res. & Trade LLC v. FERC*,
    665 F.3d 203 (D.C. Cir. 2011) ..............................................................14

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ..................................................... 17, 18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................... 19, 27

*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*,
    874 F.2d 1346 (10th Cir. 1989) ........................................ 44, 45, 46, 47

**Federal Energy Regulatory Commission Orders**

*Basin Elec. Power Coop.*, 172 FERC ¶ 61,221 (2020),
    *order on reh'g*, 174 FERC ¶ 61,094 (2021) ..................................... 24, 37, 41, 46

*Northwest Rural Public Power District v. Basin Electric Power
    Cooperative, et al.*, 189 FERC ¶ 61,164 (2024) ..... xii, 1, 2, 12, 14, 28, 29, 30, 32,
    33, 37, 39, 40, 44, 45, 46, 49, 51

*Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*,
    190 FERC ¶ 62,067 (2025) ........................................................................ xi, 1, 3

*Northwest Rural Public Power District v. Basin Electric Power
    Cooperative, et al.*, 191 FERC ¶ 61,087 (2025) ..... xi, 1, 3, 13, 14, 29, 33, 34, 36,
    37, 38, 40, 43, 44, 46, 47, 49

*Old Dominion Elec. Coop.*,
    145 FERC ¶ 61,132 (2013) ..................................................................................... 20

*Pub. Serv. Co. of Colo.*,
    156 FERC ¶ 61,187 (2016) ..................................................................................... 25

*Tri-State Generation and Transmission Ass'n, Inc.*,
    171 FERC ¶ 61,207 (2020) ....................................................................................... 9

*Tri-State Generation and Transmission Ass'n, Inc.*,
    175 FERC ¶ 61,229 (2021) ....................................................................................... 9

*Tri-State Generation and Transmission Ass'n, Inc.*,
    177 FERC ¶ 61,059 (2021) ..................................................................................... 12

*Tri-State Generation and Transmission Ass'n, Inc.*,
    180 FERC ¶ 63,034 (2022) ..................................................................................... 40

*Tri-State Generation and Transmission Ass'n, Inc.*,
    185 FERC ¶ 61,201 (2023) ....................................................................... xii, 7, 10, 40

*Tri-State Generation and Transmission Ass'n, Inc.*,
    187 FERC ¶ 61,101 (2024) ........................................................................... 10, 50

*Tri-State Generation and Transmission Ass'n, Inc.,*
    189 FERC ¶ 61,165 (2024) ............................................................. xi, 11, 12, 20, 51

*Tri-State Generation and Transmission Ass'n, Inc.,*
    191 FERC ¶ 61,088 (2025)........................................................... xi, 11, 34

*Upper Mo. G. & T. Elec. Coop., Inc.,*
    174 FERC ¶ 61,019 (2021)...................................................................24

**Statutes and Regulations**

5 U.S.C. § 706.........................................................................................13

Section 201, 16 U.S.C. § 824 (2018) .......................................................6

Section 205, 16 U.S.C. § 824d (2018) .....................................................8

Section 206, 16 U.S.C. § 824e (2018) .....................................................8

Section 313, 16 U.S.C. § 825*l* (2018) ..................................................3, 4

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| April 29 CTP Rehearing Order | *Tri-State Generation and Transmission Ass'n, Inc.*, 191 FERC ¶ 61,088 (2025). |
| Basin Electric | Basin Electric Power Cooperative |
| Commission | Federal Energy Regulatory Commission |
| Complaint | Northwest Rural Public Power District, Section 206 Complaint and Request for Fast Track Processing of Northwest Rural Public Power District, Docket No. EL24-93-000 (filed Mar. 25, 2024) (R. 1; J.A. _____). |
| Complaint Rehearing Order | *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Order Addressing Arguments Raised on Rehearing, Docket No. EL24-93-001, 191 FERC ¶ 61,087 (April 29, 2025) (R. 27; J.A. _____). |
| December 5 CTP Order | *Tri-State Generation and Transmission Ass'n, Inc.*, 189 FERC ¶ 61,165 (2024). |
| Eastern Interconnection Wholesale Power Contract | Wholesale Power Contract under which Basin Electric is the all-requirements provider of power for Tri-State in the Eastern Interconnection |
| February 3 Notice | *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. EL24-93-001, 190 FERC ¶ 62,067 (February 3, 2025) (R. 25; J.A. _____). |
| Member | Basin Electric's member cooperatives |
| Moody's | Moody's Investors Service |

| Motion | Motion to Dismiss for Lack of Jurisdiction, filed by the Commission on June 23, 2025. |
|---|---|
| Northwest Rural | Northwest Rural Public Power District |
| Order Denying Complaint | *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Order Denying Complaint, Docket No. EL24-93-000, 189 FERC ¶ 61,164 (December 5, 2024) (R. 21; J.A. ____). |
| Order on CTP Initial Decision | *Tri-State Generation and Transmission Ass'n, Inc.*, 185 FERC ¶ 61,201 (2023). |
| Rehearing Request | Request for Rehearing of Basin Electric Power Cooperative, Docket No. EL24-93-000 (filed Jan. 3, 2025) (R. 22; J.A. ____). |
| Tri-State | Tri-State Generation and Transmission Association, Inc. |
| Tri-State Eastern Members | Tri-State's six Eastern Interconnection member-systems |
| Tri-State Eastern Member Contracts | Wholesale Electric Service Contracts between Tri-State and its six Eastern Members |

# I.    JURISDICTIONAL STATEMENT

Petitioner Basin Electric Power Cooperative ("Basin Electric") seeks review of the following orders:

1. *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Order Denying Complaint, Docket No. EL24-93-000, 189 FERC ¶ 61,164 (December 5, 2024) ("Order Denying Complaint") (R. 21; J.A. ____);[1]

2. *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. EL24-93-001, 190 FERC ¶ 62,067 (February 3, 2025) ("February 3 Notice") (R. 25; J.A. ____); and

3. *Northwest Rural Public Power District v. Basin Electric Power Cooperative, et al.*, Order Addressing Arguments Raised on Rehearing, Docket No. EL24-93-001, 191 FERC ¶ 61,087 (April 29, 2025) ("Complaint Rehearing Order") (R. 27; J.A. ____).

In its Order Denying Complaint (R. 21; J.A. ____), the first of the orders under review, the Federal Energy Regulatory Commission ("Commission") purported to deny the complaint filed by Northwest Rural Public Power District ("Northwest Rural"), but in reality granted the relief requested by Northwest Rural. Northwest Rural filed a complaint against Basin Electric and Tri-State Generation and

---

[1]    Items designated as "R" refer to the Record Item Number on the Certified Index to the Record filed by the FERC on August 14, 2025. "J.A." refers to the Joint Appendix, the filing of which has been deferred until February 27, 2026.

Transmission Association, Inc. ("Tri-State") in the proceeding underlying this appeal. Northwest Rural requested that the Commission exercise primary jurisdiction over the interpretation of the all-requirements Wholesale Power Contract between Tri-State and Basin Electric in the Eastern Interconnection ("Eastern Interconnection Wholesale Power Contract") and find that Northwest Rural's withdrawal from Tri-State is permissible under the Eastern Interconnection Wholesale Power Contract, among other requests. *See* Northwest Rural Public Power District, Section 206 Complaint and Request for Fast Track Processing of Northwest Rural Public Power District, Docket No. EL24-93-000, at 3 (filed Mar. 22, 2024) ("Complaint") (R. 1; J.A. ____). The Commission issued an order denying the Complaint on December 5, 2024, but in doing so, it exercised primary jurisdiction and determined that Northwest Rural's request to withdraw from Tri-State does not breach the terms of the Eastern Interconnection Wholesale Power Contract. *See* Order Denying Complaint (R. 21; J.A. ____). That is, the Commission gave Northwest Rural the exact relief it had requested.

Basin Electric filed a timely request for rehearing of the Order Denying Complaint on January 3, 2025. Basin Electric Power Cooperative, Request for Rehearing of Basin Electric Power Cooperative, Docket No. EL24-93-000 (filed Jan. 3, 2025) at 15-16 (R. 22; J.A. ____) ("Rehearing Request"). In the Rehearing Request, Basin Electric argued that the Commission (1) failed to engage in reasoned

decision-making by not considering the Eastern Interconnection Wholesale Power Contract in its entirety when acting on the complaint; (2) erred by interpreting section 9 of the Eastern Interconnection Wholesale Power Contract in a manner that renders section 14 superfluous; and (3) erred by ignoring precedent when finding that Northwest Rural's withdrawal from Tri-State does not result in a breach of the Eastern Interconnection Wholesale Power Contract. Rehearing Request at 8-9 (R. 22; J.A. ____). Northwest Rural filed a motion for leave to answer and answer to the Rehearing Request on January 21, 2025. R. 23; J.A. ____. On February 3, 2025, the Commission issued the February 3 Notice, which denied rehearing by operation of law and provided for further consideration in a future order. *See* February 3 Notice (R. 25, J.A. ____). The Commission's determinations in the Order Denying Complaint and the February 3 Notice are final for purposes of judicial review. *See* 16 U.S.C. § 825*l*(a) (2018). Pursuant to Federal Power Act Section 313(b), 16 U.S.C. § 825*l*(b), Basin Electric timely filed with this Court its petition for review on February 13, 2025 in Case No. 25-1060.

The Commission issued the Complaint Rehearing Order on April 29, 2025, in which it continued to reach the same conclusion as it did in the Order Denying Complaint. *See* Complaint Rehearing Order at P 2 (R. 27; J.A. ____). The Commission's determinations in the Complaint Rehearing Order also are final for purposes of judicial review. *See* 16 U.S.C. § 825*l*(a). Pursuant to Federal Power Act

3

Section 313(b), 16 U.S.C. § 825*l*(b), Basin Electric timely filed with this Court its petition for review of the Rehearing Order on May 19, 2025 in Case No. 25-1130. Accordingly, this Court has jurisdiction to review the Commission's orders discussed in this brief.

## II.     STATUTES AND REGULATIONS

The statutes and regulations discussed in this brief are contained in the attached addendum.

## III.    STATEMENT OF THE ISSUES

1. Whether the Commission failed to engage in reasoned decision-making by not considering all evidence in the underlying proceeding when it based its decision on a portion of section 9 of the all-requirements Eastern Interconnection Wholesale Power Contract without considering this provision in its entirety;

2. Whether the Commission's interpretation of section 9 of the all-requirements Eastern Interconnection Wholesale Power Contract is arbitrary and capricious because it renders section 14 of the contract null; and

3. Whether the Commission failed to engage in reasoned decision-making by dismissing applicable precedent that holds that contracts similar to the Eastern Interconnection Wholesale Power Contract do not provide for, and in fact preclude, early termination.

4

## IV. STATEMENT OF THE CASE

### A. DESCRIPTION OF BASIN ELECTRIC

Basin Electric is a consumer-owned rural electric generation and transmission cooperative headquartered in Bismarck, North Dakota. Basin Electric's electric transmission facilities include approximately 2,500 miles of electric transmission lines and equipment located in 93 switchyards. Basin Electric operates approximately 5,200 megawatts of electric generating capacity and has approximately 8,400 megawatts of capacity in its generation portfolio. Basin Electric provides supplemental wholesale power to 139 rural electric Member systems ("Members") in Colorado, Iowa, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South Dakota, and Wyoming. Its Members' systems serve approximately three million member-consumers in the Eastern Interconnection and the Western Interconnection.

As a cooperative, Basin Electric is owned and governed by its Members, which are also its retail or wholesale customers. The cooperative structure is designed to give the Members the opportunity to satisfy their collective needs more effectively than if the members acted independently. Basin Electric's members are classified into four classes (A, B, C, and D) depending on how they are supplied with Basin Electric's electric services. Basin Electric has 19 Class A Members, one Class B Member, 118 Class C Members, and one Class D Member. Basin Electric's

operating revenue comes primarily from its Class A Members, including, as relevant to this proceeding, Tri-State. Although the percentage of its energy requirement that each Class A Member receives varies, Basin Electric supplied more than 80% of its Class A Members' requirements in 2021, 2022, 2023, and 2024.

Basin Electric is an electric cooperative that as of July 16, 2025, receives financing under the Rural Electrification Act of 1936 and therefore is not a "public utility" as that term is defined in section 201(e) of the Federal Power Act by virtue of section 201(f) of the Federal Power Act. 16 U.S.C. §§ 824(e) and 824(f). Basin Electric was subject to the Commission's jurisdiction from November 1, 2019 until July 16, 2025, which includes the period when the Commission acted on the Complaint.

### B. BASIN ELECTRIC AND TRI-STATE ARE PARTIES TO TWO WHOLESALE POWER CONTRACTS.

Tri-State and Basin Electric are parties to two Wholesale Power Contracts. The Eastern Interconnection Wholesale Power Contract between Tri-State and Basin Electric provides that Tri-State will purchase the power requirements of its six Eastern Interconnection member-systems ("Tri-State Eastern Members") from Basin Electric through 2050. *See* Complaint, Exh. No. NPD-0013 (R. 1; J.A. _____). Consistent with this agreement, the long-term all-requirements Wholesale Electric Service Contracts ("Tri-State Eastern Member Contracts") between Tri-State and the Tri-State Eastern Members provide that Tri-State will provide, and its Eastern

6

Interconnection members will purchase, all the power the Tri-State Eastern Members require through 2050. *See, e.g.*, *Tri-State Generation and Transmission Ass'n, Inc.*, 185 FERC ¶ 61,201, at PP 2, 112 (2023) ("Order on CTP Initial Decision"). The Tri-State Eastern Member Contracts constitute Tri-State's primary assets in the Eastern Interconnection. *See id.* at P 215 & n.393.

As relevant to this proceeding, the Eastern Interconnection Wholesale Power Contract contains section 9, titled "Transfer by Tri-State." *See* Complaint, Exh. No. NPD-0013 at 9 (R. 1; J.A. ____). Section 9 of the Eastern Interconnection Wholesale Power Contract (R. 1; J.A. ____) states:

> Tri-State shall not without the approval in writing of Seller, which approval shall not be unreasonably withheld, delayed or conditioned, take or suffer to be taken any steps for reorganization or to consolidate with or merge into any organization, or to sell, lease or transfer (or make any agreement therefore) all or a substantial portion of its assets, located in the Eastern Interconnection, whether now owned or hereafter acquired. Notwithstanding the foregoing, Tri-State may take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation, or to sell, lease or transfer (or make any agreement therefore) all or a substantial portion of its assets, located in the Eastern Interconnection, whether now owned or hereafter acquired, so long as Tri-State shall pay such pro rata portion of the outstanding indebtedness, as well as other obligations and commitments of Seller at the time existing, as shall be determined by Seller and shall otherwise comply with such reasonable terms and conditions as Seller shall require. Notwithstanding the foregoing, no such approval shall be required to take the actions contemplated herein so long as the purchaser or surviving organization is a member of Seller and has validly authorized, executed and delivered a contract for electric service substantially in the form of this Agreement.

7

The Eastern Interconnection Wholesale Power Contract (R. 1, J.A. ____) also contains a termination provision in section 14, which provides as follows:

> This Agreement is effective and deliveries under this Agreement will begin on the Effective Date. This Agreement shall remain in effect until December 31, 2050. If either Party desires to terminate this Agreement on December 31, 2050, it shall provide written notice of intent to terminate by January 1, 2045. If notice of termination is not received by either Party prior to January 1, 2045, this Agreement shall remain in effect unless terminated by either Party giving to the other Party not less than five (5) years prior written notice of its intention to terminate. As of the Effective Date, the Former WPC shall be amended and restated in its entirety by this Agreement and the Western Interconnection Wholesale Power Contract.

### C.     TRI-STATE VOLUNTARILY IMPLEMENTED A CONTRACT TERMINATION PAYMENT METHODOLOGY.

The Commission's problematic decisions in the underlying orders were not made in a vacuum; rather, they are part of an effort by the Commission to protect its orders concerning the justness and reasonableness of Tri-State's proposed contract termination payment methodology. Those orders all stem from a filing Tri-State submitted shortly after becoming subject to the Commission's jurisdiction under Federal Power Act sections 205 and 206. *See* 16 U.S.C. §§ 824d and 824e (2018). While the Tri-State Eastern Member Contracts do not provide for or permit early contract termination, Tri-State voluntarily, and without Basin Electric's consent, decided to allow for such an early termination, resulting in a complex series of filings to and orders from the Commission. Specifically, on April 13, 2020, Tri-State submitted a proposed contract termination payment methodology to the Commission

8

for approval. *See* Tri-State Generation and Transmission Association, Inc., Initial Filing of Rate Schedule FERC No. 281 (Contract Termination Payment Methodology), Docket No. ER20-1559-000, Transmittal Letter at 5 (filed Apr. 13, 2020). Tri-State's proposed methodology provided for review and approval of any contract termination requests by Tri-State's board of directors. The Commission accepted Tri-State's proposal, subject to hearing and settlement proceedings. *Tri-State Generation and Transmission Ass'n, Inc.*, 171 FERC ¶ 61,207 (2020). On June 17, 2021, the Commission issued an Order to Show Cause, directing Tri-State to either: (1) show cause as to why its contract termination payment methodology remains just and reasonable, or (2) explain what changes to its contract termination payment methodology it believes would remedy the identified concerns, were the Commission to determine that the contract termination payment methodology is unjust and unreasonable or unduly discriminatory or preferential. *See Tri-State Generation and Transmission Ass'n, Inc.*, 175 FERC ¶ 61,229 (2021). Among other provisions, the Commission took issue with the discretion granted to Tri-State's board of directors. In response to that Order to Show Cause, Tri-State submitted a revised contract termination payment methodology. In that filing, Tri-State removed its board of directors' discretion to deny or take any action to modify contract termination requests. In response, Basin Electric argued that Tri-State's proposal to

allow its members to withdraw and its adoption of a contract termination payment methodology breached the Eastern Interconnection Wholesale Power Contract.

In a December 19, 2023 order modifying Tri-State's proposed contract termination payment methodology (*Tri-State Generation and Transmission Ass'n, Inc.*, 185 FERC ¶ 61,201 (2023); *order on reh'g*, 187 FERC ¶ 61,101 (2024); *appeal pending*, *Tri-State Generation and Transmission Ass'n, Inc. v. FERC*, 10th Cir. Case Nos. 24-2538, *et al.*), the Commission declined to address Basin Electric's question of whether there had been a breach of the Eastern Interconnection Wholesale Power Contract "because that issue is not before the Commission in this proceeding." *Id.* at P 554 & n.900. The Commission issued a further order addressing arguments raised on rehearing and likewise determined that "[t]he issue of what might constitute a breach of the [Eastern Interconnection Wholesale Power Contract] is not before us in this proceeding." *Tri-State,* 187 FERC ¶ 61,101 at PP 66-67. According to the Commission, "the potential for a breach and the consequences thereof would impact the availability of exit payments regardless of the particular [contract termination payment] methodology." *Id.* at P 67.

The Commission issued a subsequent order on December 5, 2024, in which it explained—because of the determination made in the orders on appeal here—it should not be assumed that a Tri-State member's withdrawal is a breach of the Eastern Interconnection Wholesale Power Contract. *Tri-State Generation and*

10

*Transmission Ass'n, Inc.,* 189 FERC ¶ 61,165, at P 87 (2024) ("December 5 CTP Order"); *order on reh'g*, 191 FERC ¶ 61,088 (2025) ("April 29 CTP Rehearing Order"); *appeal pending*, *Tri-State Generation and Transmission Ass'n, Inc. v. FERC*, 10th Cir. Case Nos. 25-9522, *et al.* On April 29, 2025, the Commission issued a rehearing order confirming the determinations made in the December 5 CTP Order, "continu[ing] to find that Tri-State should not calculate the cost of the Basin Eastern [Eastern Interconnection Wholesale Power Contract] under the assumption that a Tri-State member's withdrawal from Tri-State results in a breach of the [Eastern Interconnection Wholesale Power Contract]." April 29 CTP Rehearing Order at P 64. The December 5 CTP Order and April 29 CTP Rehearing Order are on appeal before the Court of Appeals for the Tenth Circuit in Case Nos. 25-9522, *et al.*

### D. NORTHWEST RURAL COMPLAINT

On March 25, 2024, Northwest Rural filed a complaint against Basin Electric and Tri-State in the proceeding underlying this appeal. *See* Complaint (R. 1, J.A. ____). Northwest Rural requested that the Commission exercise primary jurisdiction over the interpretation of the all-requirements Eastern Interconnection Wholesale Power Contract and find that Northwest Rural's withdrawal from Tri-State is permissible under that contract, among other requests. *See* Complaint at 3 (R. 1; J.A. ____). The Commission issued an order denying the Complaint on December 5,

11

2024, determining that Northwest Rural's request to withdraw from Tri-State does not breach the terms of the Eastern Interconnection Wholesale Power Contract. *See* Order Denying Complaint (R. 21; J.A. _____).

Concurrently with the Order Denying Complaint in the underlying proceeding, the Commission issued the December 5 CTP Order in Tri-State's contract termination payment methodology proceeding, described in section IV.C above, in which the Commission clarified that Northwest Rural's withdrawal from Tri-State was not effectuated. *See* December 5 CTP Order at P 88. As such, at the time of the Commission's Order Denying Complaint on appeal in this proceeding, no Tri-State Eastern Member had successfully withdrawn from Tri-State, and any hypothetical withdrawal could not occur for at least two years. *See Tri-State Generation and Transmission Ass'n, Inc.*, 177 FERC ¶ 61,059, at P 15 (2021) (describing that a member must provide "a two-year advance notice of its intent to withdraw from Tri-State"). However, on December 30, 2025, shortly after the Commission issued the Order Denying Complaint interpreting the Eastern Interconnection Wholesale Power Contract as allowing member withdrawals, Northwest Rural notified Tri-State of its intent to withdraw, effective January 1, 2027. *See* section VII.A.1, below. On April 29, 2025, the Commission issued an order on rehearing of the Order Denying Complaint, in which it continued to reach

the same result as the Order Denying Complaint. *See* Complaint Rehearing Order (R. 27; J.A. ____).

Basin Electric filed petitions for review of the Commission's Order Denying Complaint and February 3 Notice on February 13, 2025 in Case No. 25-1060. The Court held the proceeding in abeyance pending further Commission action on Basin Electric's Rehearing Request. After the Commission issued the Complaint Rehearing Order on April 29, 2025, Basin Electric filed a petition for review of the Complaint Rehearing Order on May 19, 2025 in Case No. 25-1130. Thereafter, on May 22, 2025, this Court consolidated Case Nos. 25-1060 and 25-1130, and pursuant to a June 10, 2025 order, returned the proceedings to an active schedule.

## V.    STANDARD OF REVIEW

The Commission's orders are subject to review under sections 706(2)(A) and 706(2)(C) of the Administrative Procedure Act. Under the Administrative Procedure Act, this Court must "set aside" agency orders that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A). Under this standard, an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*") (internal quotations omitted). An agency decision that does not do so, including one that "entirely fail[s]

to consider an important aspect of the problem," is arbitrary and capricious. *Id.* This Court has held repeatedly that, consistent with its obligation to engage in reasoned decision-making, "[a]n agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious." *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (citing *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001)); *accord PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011).

## VI. SUMMARY OF THE ARGUMENT

Basin Electric requests that this Court vacate the underlying orders because they erroneously interpret the all-requirements Eastern Interconnection Wholesale Power Contract as permitting early termination. In making this determination, the Commission's Order Denying Complaint and Complaint Rehearing Order erred by failing to consider the Eastern Interconnection Wholesale Power Contract in its entirety. The Commission also did not abide by normal contract interpretation rules or engage in reasoned decision-making by dismissing applicable precedent without appropriate explanations.

The Commission failed to engage in reasoned decision-making by taking an overly narrow view of the all-requirements Eastern Interconnection Wholesale Power Contract, thus failing to consider all evidence in this proceeding and ignoring "an important aspect of the problem." *State Farm*, 463 U.S. at 43; *KeySpan-*

14

*Ravenswood, LLC v. FERC*, 348 F.3d 1053, 1056 (D.C. Cir. 2003). The Commission's determination that Northwest Rural's withdrawal from Tri-State would not result in a breach of the Eastern Interconnection Wholesale Power Contract ignores the language of section 9 requiring that Tri-State pay "other obligations and commitments of Seller at the time existing, as shall be determined by Seller and shall otherwise comply with such reasonable terms and conditions as Seller shall require." Complaint, Exh. No. NPD-0013 at 9 (R. 1; J.A. _____).

This Court also should vacate the Commission's interpretation of section 9 as permitting early termination of the Eastern Interconnection Wholesale Power Contract because this interpretation provides members a back door to exit their all-requirements Wholesale Power Contracts with Basin Electric. This ignores that section 14 of the Eastern Interconnection Wholesale Power Contract provides members with no such right. The Commission's erroneous interpretation of section 9 therefore renders section 14 superfluous and is inconsistent with rules of contract interpretation.

Further, the Commission inappropriately disregarded evidence regarding the purpose of the Eastern Interconnection Wholesale Power Contract. A cooperative's wholesale power contracts serve as the linchpin of the cooperative's credit and are the foundation of the cooperative's strength, and its main source of revenue. The wholesale power contracts are also the main asset and assurance that lenders rely on

15

when deciding to lend to Basin Electric for infrastructure improvement and expansion projects. The Commission ignored this evidence and therefore did not consider that its interpretation of the contract is illogical when considered in this context.

Moreover, the Commission's interpretation of section 9 is a departure from its past precedent, for which the Commission has provided no reasoned explanation. While finding that language in the Tri-State Eastern Member Contracts similar to section 9 is not applicable in the case of member withdrawals from Tri-State, the Commission nevertheless determined that the language of section 9 does apply to and allow for member withdrawals without a breach of the Eastern Interconnection Wholesale Power Contract. The Commission thus found that the same provision in two different contracts have different meanings, and it failed to provide any reasoned explanation for treating them differently and departing from its own precedent.

The Commission also failed to follow court precedent interpreting similar language to section 9 of the Eastern Interconnection Wholesale Power Contract. The Commission's finding that Northwest Rural's request for withdrawal from Tri-State does not result in a breach of the all-requirements Eastern Interconnection Wholesale Power Contract is based in part on the Commission's attempt to distinguish precedent interpreting similar contracts as precluding early termination. This

16

precedent, however, is not distinguishable; the Commission simply declined to follow it.

Action by this Court to vacate the Commission's orders would acknowledge that the Eastern Interconnection Wholesale Power Contract is not intended to permit a Basin Electric Member such as Tri-State to voluntary breach its all-requirements Eastern Interconnection Wholesale Power Contract by granting all of its members the right to terminate their agreements before the date specified in the contract.

## VII.  STANDING

Pursuant to D.C. Circuit Rule 28(a)(7), Basin Electric has standing to seek review of the Commission orders described in section I above. Basin Electric was an active participants in Docket No. EL24-93-000, in which the Commission asserted primary jurisdiction and then erroneously interpreted the Eastern Interconnection Wholesale Power Contract in response to the Complaint filed by Northwest Rural against Basin Electric and Tri-State. If upheld by the Court, the Commission's orders will result in injury in fact to Basin Electric and its Members, as described in more detail below. Thus, Basin Electric possesses standing before this Court to raise the issues contained in its petitions for review. *See Sierra Club v. EPA*, 292 F.3d 895, 900-01 (D.C. Cir. 2002).

On June 23, 2025, the Commission filed a Motion to Dismiss for Lack of Jurisdiction in this proceeding. Basin Electric filed a response to the Commission's

motion on July 3, 2025,[2] and the Commission filed a reply to Basin Electric's response on July 10, 2025. On July 31, 2025, the Court ordered that the Commission's motion to dismiss be referred to the merits panel for this proceeding. It also directed the parties to address in their briefs the issues presented in the motion to dismiss.

In accordance with the Court's order, this Standing section addresses the issues raised in the Commission's motion. However, rather than framing its standing section as a response to the Commission's motion, Basin Electric has framed it as an affirmative showing of standing. Therefore, it is not identical to Basin Electric's response to the Commission's motion filed on July 3, 2025. Pursuant to Circuit Rule 28(a)(7), Basin Electric also provides a standing addendum to this brief to support its showing of standing, which contains Exhibits A through D, referenced herein. As shown below, Basin Electric has suffered an injury in fact by the Commission's actions in the orders on appeal and has established a "substantial probability" of standing. *See* D.C. Cir. Rule 28(a)(7); *Sierra Club v. EPA*, 292 F.3d at 898.

---

[2]    Northwest Rural also filed a response to the Commission's motion on July 3, 2025.

**A.    BASIN ELECTRIC SUFFERED AN INJURY IN FACT RESULTING FROM THE ORDERS ON APPEAL.**

Basin Electric has suffered an injury in fact resulting from the underlying orders. To establish standing, petitioners "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *City of Oberlin, Ohio v. FERC*, 937 F.3d 599, 604 (D.C. Cir. 2019); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury in fact must be "both concrete and particularized and actual or imminent, not conjectural or hypothetical." *New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 368 (D.C. Cir. 2013). Further, a party "must affirmatively demonstrate how it is adversely affected by [FERC]'s orders." *Kansas Corp. Comm'n v. FERC*, 881 F.3d 924, 929 (D.C. Cir. 2018). As shown below, Basin Electric meets this Court's standard for showing an injury in fact and has Article III standing to pursue its appeal before this Court.

### 1.    Basin Electric has suffered an injury in fact.

Basin Electric has suffered an injury in fact resulting from the underlying orders that is "both concrete and particularized and actual or imminent, not conjectural or hypothetical." *New England Power Generators*, 707 F.3d at 368. Under the Commission's interpretation of the Eastern Interconnection Wholesale Power Contract, Northwest Rural's request to withdraw from Tri-State would not breach the terms of the Eastern Interconnection Wholesale Power Contract. This

19

means Northwest Rural will be permitted to exit Tri-State, which causes harm to Basin Electric and its Members. Indeed, in the December 5 CTP Order, the Commission held that the CTP payment for members (*e.g.*, Northwest Rural) to exit Tri-State must be calculated with the understanding that such an exit does not breach the Eastern Interconnection Wholesale Power Contract, precisely because of the Commission's order on appeal in this case. *See* December 5 CTP Order at P 87.

Northwest Rural's withdrawal, as permitted by the underlying orders, will have detrimental financial effects on Basin Electric's Members. *See* the Affidavit of Rebecca A. Kern at ¶ 6 (included in the Standing Addendum as Exhibit A).[3] Basin Electric's Wholesale Power Contracts serve as the linchpin of its credit and are the foundation of its strength. The primary purpose of generation and transmission cooperatives, such as Basin Electric, is to provide wholesale electric power to their member distribution cooperatives. *Id.* at ¶ 7. This means that Basin Electric is owned by its transmission cooperative Members, which in turn are owned by their distribution cooperative members, which in turn are owned by their own members (the end use customers), who, by virtue of being both the owners and the customers, are responsible for Basin Electric's expenses. *See Old Dominion Elec. Coop.*, 145 FERC ¶ 61,132, at P 13 (2013). Basin Electric does not have shareholders. Rather,

---

[3]    Ms. Kern's affidavit was originally prepared for and provided as an exhibit to Basin Electric's response to the Commission's motion to dismiss.

if it is unable to secure the revenue needed to operate, the Members—who are also the ratepayers—are the ones ultimately impacted. Exhibit A at ¶ 7.

This is borne out by Moody's Investors Service ("Moody's") consideration of the long-term wholesale power contracts between a generation and transmission cooperative and its members as a major credit factor for ratings agencies. In its methodology for analyzing the credit strength of the electric cooperative utility sector (*see* Moody's Investors Service, Rating Methodology: US Electric Generation & Transmission Cooperatives (June 20, 2024) (included in the Standing Addendum as Exhibit B)), Moody's explains that "[a]gainst a myriad of credit challenges, including spending for capital projects, volatile fuel costs and persisting uncertainty surrounding environmental regulations and related costs, the strength of the wholesale power contracts and the predictable revenue stream they provide for [generation and transmission cooperatives] is a primary source of credit support." *Id.* at 5. Moody's also notes that, "[l]ong-term wholesale power supply contracts between [generation and transmission cooperatives] and their members provide [generation and transmission cooperatives] with a high degree of assurance that costs and capital investment can be recovered from rates charged to customers." *Id.* at 5. In other words, the Wholesale Power Contracts are the main asset and assurance that lenders rely on when deciding to lend to Basin Electric for infrastructure improvement and expansion projects. If members are permitted to exit at any time,

21

as the underlying orders permit, then credit rating agencies no longer have this assurance. Thus, the Commission's decision to interpret the Eastern Interconnection Wholesale Power Contract to allow the Tri-State Eastern Members to withdraw without a breach will have a negative financial impact on Basin Electric and its Members.

Further, Basin Electric and its Members will be financially impacted by the Commission's decision because Northwest Rural's withdrawal from Tri-State will reduce the requirements Tri-State purchases pursuant to the Eastern Interconnection Wholesale Power Contract, shifting costs to Basin Electric and its Members. Exhibit A at ¶ 8. Basin Electric constructs or acquires assets specifically to meet the load share ratios of each of its Members. *Id.* at ¶ 9. If Northwest Rural, and all Tri-State Eastern Members, are able to exit Tri-State, Basin Electric risks under-recovering the costs of its assets, which were acquired, in part, to serve Tri-State's members. *Id* at ¶ 10. This under-recovery will shift the costs of these assets to Basin Electric's other Members because Tri-State will be purchasing less electric power and energy under the Eastern Interconnection Wholesale Power Contract. *Id.* Because Basin Electric is a not-for-profit, electric cooperative, the risk of under-recovery resulting from Tri-State's members withdrawing cannot be shifted onto shareholders. Instead, it will be unacceptably shifted onto the remaining Members. *Id.*

This injury in fact to Basin Electric and its Members resulting from the underlying orders also is imminent.[4] Shortly after the Commission's order finding that member exits do not violate the Eastern Interconnection Wholesale Power Contract, Northwest Rural again notified Tri-State of its intent to withdraw from Tri-State. The Commission issued the Order Denying Complaint on December 5, 2024, and Northwest Rural submitted its notice of intent to withdraw on December 30, 2024. *See* Press Release, Tri-State Generation and Transmission Ass'n, Inc., Northwest Rural Public Power District provides second notice to withdraw from Tri-State membership (Jan. 1, 2025) (included in the Standing Addendum as Exhibit C). Northwest Rural's withdrawal will become effective on January 1, 2027. *See id.* This means Northwest Rural is in the process of exiting, and neither Tri-State nor Basin Electric have the ability to stop this (or any) withdrawal. While the January 1, 2027 effective date will not occur immediately, for cooperative planning purposes, the exit is imminent. Exhibit A at ¶ 12. Basin Electric must make current planning decisions that take into account that it will no longer provide electric power and energy to Tri-State to serve Northwest Rural. *Id.* at ¶¶ 9, 12-13.

---

[4]    Basin Electric notes that injury in fact need only be actual *or* imminent to establish standing. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). Basin Electric's harm is both actual *and* imminent.

The underlying orders also cause an injury in fact by creating a conflict between the Commission's finding and the provisions in Basin Electric's Wholesale Power Contracts that do not permit early termination. The underlying orders allow members to create their own path to termination, causing uncertainty for Basin Electric and its Members. This Court has found injury where parties are directly harmed from uncertainty due to Commission orders regarding their ongoing rights and responsibilities under an agreement to which they are a party. *See Am. Mun. Power, Inc. v. FERC*, 86 F.4th 922, 931 (D.C. Cir. 2023). The conflict between the Commission's finding in the underlying orders and the termination provisions of Basin Electric's Wholesale Power Contracts results in uncertainty for Basin Electric and its members both with respect to (1) the sanctity and viability of the Wholesale Power Contracts, and (2) planning and resource needs.

First, the Commission has prioritized Tri-State and Tri-State's members over Basin Electric and its other Members. It did so by deciding that Tri-State's decision to allow early contract termination, via terms *not* provided for in the contract, trumps Basin Electric's decision, via terms that *are* provided for in the contract, not to allow for early contract termination. It also did so despite the Commission's own precedent on this topic. *See Basin Elec. Power Coop.*, 172 FERC ¶ 61,221, at P 86 (2020), *order on reh'g*, 174 FERC ¶ 61,094 (2021); *Upper Mo. G. & T. Elec. Coop., Inc.*, 174 FERC ¶ 61,019, at P 78 (2021); *Pub. Serv. Co. of Colo.*, 156 FERC ¶ 61,187

(2016). Allowing terminations in this manner allows a non-party to a contract to undermine the terms agreed to by the parties to the Wholesale Power Contracts. It also allows a party to the contract to create an out, as Tri-State did. As described in section IV.C, above, Tri-State adopted a board policy permitting its members to withdraw, despite having signed the Eastern Interconnection Wholesale Power Contract. The Commission's order thus allows a party to a contract to create a backdoor exit from that contract.

Second, in creating this conflict, yet not requiring a Tri-State Eastern Member or Tri-State to notify Basin Electric when a member intends to exit, the Commission shifts the risk of planning onto Basin Electric and its other Members. As described above, Basin Electric constructs or acquires assets specifically to meet the load share ratios of each of its Members. Exhibit A at ¶ 9. Basin Electric cannot adequately plan for load decreases resulting from Member exits if it is not notified of these exits, to the detriment of its Members. *Id.* at ¶ 13. In other words, Tri-State's members receive the benefit of being able to plan for load decreases (by reducing investment in new resources and planning out purchases) while Basin Electric's other Members do not.

Finally, the Commission's interpretation of the Eastern Interconnection Wholesale Power Contract results in a functional termination of the Eastern Interconnection Wholesale Power Contract by Tri-State. For example, even if

Northwest Rural constitutes one-eleventh of Tri-State's Eastern Interconnection load, as one of Tri-State's six Eastern Interconnection members, Northwest's contract with Tri-State constitutes one-sixth of Tri-State's Eastern Interconnection assets. Exhibit A at ¶ 14. Similarly, Wheat Belt Public Power District ("Wheat Belt"), another Tri-State Eastern Member, has indicated an interest in terminating its membership in Tri-State. *See, e.g.*, Utility Dive, Tri-State's clean energy, cost reduction efforts have not quelled member exit interest (March 22, 2021) (included in the Standing Addendum as Exhibit D); *see also* Exhibit A at ¶ 14. Wheat Belt also constitutes one-sixth of Tri-State's Eastern Interconnection assets. Exhibit A at ¶ 14. Further, under the Commission's interpretation of the Eastern Interconnection Wholesale Power Contract, Tri-State can terminate all six of its contracts with the Tri-State Eastern Members. *Id.* Thus, the Commission's interpretation implicates the entirety of Tri-State's Eastern Interconnection assets and could result in a complete early termination by Tri-State of the Eastern Interconnection Wholesale Power Contract.

### 2. Basin Electric's injury in fact is traceable to the Commission's actions in the underlying orders.

The injury in fact described in section VII.A.1 is traceable to the Order Denying Complaint. The Commission's interpretation of the Eastern Interconnection Wholesale Power Contract permits Tri-State's members to withdraw without such withdrawal constituting a breach by Tri-State of the Eastern

Interconnection Wholesale Power Contract. Therefore, the negative financial impacts on Basin Electric and its Members resulting from a member withdrawal are the result of the underlying orders permitting such withdrawal. For example, to Basin Electric's knowledge, at the time of the Order Denying Complaint, no Tri-State Eastern Member had a pending withdrawal. Just over three weeks after the Commission issued the Order Denying Complaint, on December 30, 2024, Northwest Rural tendered to Tri-State its notice of intent to withdraw from Tri-State. *See* Exhibit C. The resulting harm to Basin Electric and its Members is thus the direct result of the Commission's interpretation of the Eastern Interconnection Wholesale Power Contract.

### 3. Basin Electric's injury in fact will be redressed by reversal of the Commission's underlying orders.

Basin Electric has suffered an injury in fact, as shown in section VII.A.1, above, "that is likely to be redressed by a favorable judicial decision." *City of Oberlin*, 937 F.3d at 604; *Spokeo, Inc.*, 578 U.S. 330 at 338. Basin Electric's harm will be avoided if this Court vacates the Commission's decisions in the underlying orders. If the Court reverses the Commission's finding that a Tri-State Eastern Member's withdrawal does not breach the Eastern Interconnection Wholesale Power Contract, then a Tri-State Eastern Member may not withdraw from Tri-State without Tri-State breaching the Eastern Interconnection Wholesale Power Contract. This outcome would protect the sanctity of the Eastern Interconnection Wholesale Power

Contract, would ensure the integrity of Basin Electric's cooperative structure, and would protect Basin Electric and its Members from the injury in fact described herein.

**B.    BASIN ELECTRIC WAS NOT THE PREVAILING PARTY IN THE UNDERLYING PROCEEDING.**

While the Commission denied Northwest Rural's Complaint in the underlying proceeding, Basin Electric was not the prevailing party. The Commission's initial order in this proceeding is styled as an "Order Denying Complaint," but it granted the relief requested by Northwest Rural, to the detriment of Basin Electric. In the Complaint, Northwest Rural asked that the Commission "hold that Northwest Rural's withdrawal from Tri-State does not violate the [Eastern Interconnection Wholesale Power Contract]." Order Denying Complaint at P 1 (R. 21; J.A. _____). Northwest Rural specifically requested that the Commission "hold that Northwest Rural's withdrawal from Tri-State does not violate the [Eastern Interconnection Wholesale Power Contract]." Order Denying Complaint at P 72 (R. 21; J.A. _____). The Order Denying Complaint does as Northwest Rural requests, over Basin Electric's objections. *See* Order Denying Complaint at P 73 (R. 21; J.A. _____). Thus, the Order Denying Complaint found what Northwest requested it to find—that Northwest Rural's withdrawal from Tri-State *would not* violate the Eastern Interconnection Wholesale Power Contract—and it did not find what Basin Electric requested it find—that Northwest Rural's withdrawal *would* violate the Eastern

28

Interconnection Wholesale Power Contract. In fact, in the proceeding addressing Tri-State's contract termination methodology, the Commission itself stated that "it denied the section 206 complaint, even though its no-breach finding was in Northwest Rural's favor." Brief for Respondent at 19-20, Tri-State Generation and Transmission Association, Inc. v. FERC, Nos. 25-9522 and 25-9544 (10th Cir. Aug. 29, 2025).

Despite being styled as an "Order Denying Complaint," the Commission granted Northwest Rural's requested relief (*see* Order Denying Complaint at PP 1, 73, 82 (R. 21; J.A. ____) and rejected Basin Electric's arguments. This is particularly clear in the language used by the Commission in the Complaint Rehearing Order. *See, e.g.*, Complaint Rehearing Order at P 27 (R. 21, J.A. ____) ("Basin misapprehends the Commission's decision"), P 28 (R. 21, J.A. ____) ("We also disagree with Basin . . . "), P 30 (R. 21, J.A. ____) ("We are not persuaded by Basin's argument . . ."), P 31 (R. 21, J.A. ____) ("We further disagree with Basin . . .") and ("We are not persuaded by Basin's argument . . ."). The title "Order Denying Complaint" should not be construed as evidence that Basin Electric prevailed in the underlying proceeding when the substance of the order proves otherwise. Indeed, the fact that Basin Electric sought rehearing of the Order Denying Complaint and appealed to this Court both the Order Denying Complaint and the Complaint Rehearing Order, while Northwest Rural did not, indicates which party prevailed

and which party did not. Basin Electric certainly neither "liked the result" nor "the reasoning" of the Commission's orders. *New England Power Generators Ass'n*, 707 F.3d at 366.

Finally, the Commission's determination in the Order Denying Complaint that Northwest Rural's Complaint was not moot (*see* Order Denying Complaint at 68 (R. 21; J.A. \_\_\_\_), despite that Northwest did not have an active notice of withdrawal at the time of the Complaint, supports that the Commission's decision was not merely an "advisory opinion" on the meaning of a contractual clause. *See Crowley Caribbean Transp.*, 37 F.3d 671, 674 (D.C. Cir. 1994). Because Northwest Rural did not have an active notice of withdrawal, there was no live controversy on which to act. The Commission nevertheless declined to find the Complaint moot, thus determining there was a live controversy, and interpreted the Eastern Interconnection Wholesale Power Contract as requested. The Commission was not making merely an advisory opinion. Rather, it was acting on a specific request included in the Complaint.

## VIII. ARGUMENT

The Commission's Order Denying Complaint and Complaint Rehearing Order erred in failing to consider the Eastern Interconnection Wholesale Power Contract in its entirety, abide by normal contract interpretation rules, and engage in reasoned decision-making by dismissing applicable precedent without appropriate

explanations. As supported by the below arguments, the Court should vacate the Commission's orders and the Commission's interpretation of section 9 of the Eastern Interconnection Wholesale Power Contract. Action by this Court to vacate the Commission's orders would acknowledge that the Eastern Interconnection Wholesale Power Contract is not intended to permit a Basin Electric Member such as Tri-State to voluntary breach its all-requirements Eastern Interconnection Wholesale Power Contract by granting all of its members the right to terminate their agreements before the date specified in the contract.

### A.   THE COMMISSION ERRED BY FAILING TO CONSIDER SECTION 9 IN ITS ENTIRETY.

The Commission failed to engage in reasoned decision-making by taking an overly narrow view of the all-requirements Eastern Interconnection Wholesale Power Contract, thus failing to consider all evidence in this proceeding and ignoring "an important aspect of the problem." *State Farm*, 463 U.S. at 43; *KeySpan-Ravenswood*, 348 F.3d at 1056. The Eastern Interconnection Wholesale Power Contract provides:

> Tri-State may take or suffer to be taken any steps for reorganization or to consolidate with or merge into any corporation, or to sell, lease or transfer (or make any agreement therefore) all or a substantial portion of its assets, located in the Eastern Interconnection, whether now owned or hereafter acquired, so long as Tri-State shall pay such pro rata portion of the outstanding indebtedness, ***as well as other obligations and commitments of Seller at the time existing, as shall be determined by Seller and shall otherwise comply with such reasonable terms and conditions as Seller shall require.***

31

Complaint, Exh. No. NPD-0013 at 9 (emphasis added) (R. 1; J.A. ____). The Commission failed to fully engage with the language of section 9 requiring that Tri-State pay "other obligations and commitments of Seller at the time existing, as shall be determined by Seller and shall otherwise comply with such reasonable terms and conditions as Seller shall require." *Id.* (R. 1; J.A. ____).

The Commission incorrectly determined that section 9 allows "for Tri-State to transfer assets, in the absence of Basin's approval, without breaching the [Eastern Interconnection Wholesale Power Contract]" noting "that Basin does not need to approve a transfer of a 'substantial portion' of Tri-State's Eastern Interconnection assets if Tri-State compensates Basin *by paying its pro rata portion of Basin's indebtedness*." Order Denying Complaint at P 77 (emphasis added) (R. 21; J.A. ____). The Commission then used section 9 as support for its conclusions that (1) "under the terms of the [Eastern Interconnection Wholesale Power Contract], as long as the parties meet the requirements of section 9, then Tri-State would not be in breach of the [Eastern Interconnection Wholesale Power Contract] following Northwest Rural's withdrawal," and (2) "section 9 does not prevent Northwest Rural's withdrawal from Tri-State under Rate Schedule No. 281." *Id.* at P 78 (R. 21; J.A. ____).

In making these findings, the Commission focused only on Tri-State paying a "pro rata portion of the outstanding indebtedness" and ignored the final portion of

32

section 9, which provides that Tri-State must also pay "other obligations of Seller at the time existing, as shall be determined by Seller and shall otherwise comply with such reasonable terms and conditions as Seller shall require." *Id.* at P 77 (R. 21; J.A. ____); *see also* Complaint, Exh. No. NPD-0013 at 9 (R. 1; J.A. ____). The Commission paid lip service to the "reasonable terms and conditions" language (*see, e.g.*, Order Denying Complaint at PP 76, 82 (R. 21; J.A. ____)), but it failed to engage or meaningfully acknowledge the "other obligations" language or engage with the impact both pieces of this clause would have on Tri-State's disposition of assets.

The Commission also asserted that the "reasonable terms and conditions" language in section 9 "should not be construed in a manner that would render the second sentence of section 9 inoperable and effectively prevent Tri-State from disposing of its assets as otherwise permitted by section 9." Complaint Rehearing Order at P 27 (R. 27; J.A. ____). Yet, the Commission did not consider that its interpretation of section 9 effectively renders the "reasonable terms and conditions" language of section 9 inoperable, and thus reads this term out of the contract. By permitting Tri-State to voluntarily breach the all-requirements Eastern Interconnection Wholesale Power Contract through the Commission's interpretation of section 9, the Commission has removed Basin Electric's ability to impose reasonable terms and conditions as permitted by section 9.

Reading the Complaint Rehearing Order in conjunction with the April 29 Rehearing CTP Order shows that the Commission actively tried to avoid engaging with section 9 of the Eastern Interconnection Wholesale Power Contract, and thus failed to consider an important aspect of the problem. *See State Farm* at 43. In the April 29 CTP Rehearing Order, the Commission stated that "*for the reasons stated in the concurrently issued Complaint Rehearing Order*, we continue to find that . . . Tri-State's obligations to Basin under section 9 of the [Eastern Interconnection Wholesale Power Contract] should inform the weighted average cost of the [Eastern Interconnection Wholesale Power Contract]." April 29 CTP Rehearing Order at P 64 (emphasis added). The Complaint Rehearing Order, however, stated that "[i]n deciding on Northwest Rural's complaint, the Commission needed only to determine whether a reduction in Tri-State's requirements following Northwest Rural's withdrawal would cause Tri-State to breach the [Eastern Interconnection Wholesale Power Contract]," explaining "[t]he Commission did not determine the amount Tri-State must pay Basin to comply with section 9's conditions should Northwest Rural withdraw from Tri-State, nor did the Complaint request such a determination." Complaint Rehearing Order at P 27 (R. 27; J.A. ____). Read together, these statements show that the Commission punted the discussion of section 9 to the Complaint proceeding underlying this appeal, but then failed to actively engage with

section 9 fully in the Order Denying Complaint or the Complaint Rehearing Order, essentially arguing it was outside the scope of the Complaint.

The Commission's decision was arbitrary and capricious because the Commission based its decision on a portion of section 9 without giving full weight to the entirety of this section (*see State Farm*, 463 U.S. at 43 (agency's action is "arbitrary and capricious if . . . [it] offered an explanation for its decision that runs counter to the evidence before the agency" and "entirely failed to consider an important aspect of the problem"). The Commission is required to "respond meaningfully to the evidence, for unless an agency answers objections that on their face appear legitimate, its decision can hardly be said to be reasoned." *KeySpan-Ravenswood*, 348 F.3d at 1056 (internal quotations omitted). The Commission is also required to examine relevant data and articulate a rational connection between the facts found and its regulatory choices. *See Nat'l Fuel Gas Supply v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006); *Columbia Gas Transmission v. FERC*, 448 F.3d 382, 387 (D.C. Cir. 2006). The Order Denying Complaint and the Complaint Rehearing Order did not fully consider the provision of the all-requirements Eastern Interconnection Wholesale Power Contract upon which they relied, and thereby fail to satisfy the requirement for reasoned decision-making.

### B.   THE COMMISSION'S INTERPRETATION OF SECTION 9 IS ARBITRARY AND CAPRICIOUS.

The Commission acted arbitrarily and capriciously by allowing members a back door to exit their all-requirements Wholesale Power Contracts with Basin Electric by interpreting section 9 as permitting early termination despite section 14 providing no such right or ability to terminate the contract early. Through its interpretation of section 9—which would allow Tri-State to effectively terminate its Wholesale Power Contract with Basin Electric—the Commission renders section 14 of the Eastern Interconnection Wholesale Power Contract superfluous. By making a finding that is inconsistent with rules of contract interpretation, the Commission failed to "consider an important aspect of the problem" and thus its decision was arbitrary and capricious. *State Farm* at 43.

### 1.   The Commission's interpretation of section 9 is inconsistent with section 14 of the Eastern Interconnection Wholesale Power Contract.

The Commission illogically determined that section 9 of the Eastern Interconnection Wholesale Power Contract allows early termination, despite section 14 of the contract providing the opposite. The section of the Eastern Interconnection Wholesale Power Contract that governs the term—how long the Contract will remain in effect and how the parties may terminate it—is section 14. *See* Complaint Rehearing Order at P 28 (R. 27; J.A. ____) ("[S]ection 14 addresses the 'Term' of the Basin Eastern Requirements PPA"). The Commission has referred to this as a

36

"termination provision." *See Basin Elec. Power Coop.*, 172 FERC ¶ 61,221 at P 86. Section 14 does not permit Tri-State to terminate the agreement prior to December 31, 2050. *See* Complaint, Exh. No. NPD-0013 at 12 (R. 21; J.A. ____) (stating "[t]his Agreement shall remain in effect until December 31, 2050. If either Party desires to terminate this Agreement on December 31, 2050, it shall provide written notice of intent to terminate by January 1, 2045"). The Commission recognized this in the Order Denying Complaint, explaining that "the agreement between Tri-State and Basin does not provide any means of early termination prior to 2050." Order Denying Complaint at P 74 (R. 21; J.A. ____); *see also* Complaint Rehearing Order at P 28 (R. 27; J.A. ____) (explaining that section 14 provides that the Eastern Interconnection Wholesale Power Contract "shall remain in effect until December 31, 2050"). Permitting Northwest Rural to terminate its Tri-State Eastern Member Contract has the functional effect of Tri-State terminating the Eastern Interconnection Wholesale Power Contract prior to December 31, 2050. Accordingly, the Commission erred by finding that the Eastern Interconnection Wholesale Power Contract permits member exits before December 31, 2050.

The Commission's interpretation of Section 9 allows members to exit Tri-State without it constituting a breach of the Eastern Interconnection Wholesale Power Contract by Tri-State, which ultimately could result in a functional termination of the Eastern Interconnection Wholesale Power Contract by Tri-State.

37

As noted above, the Eastern Interconnection Wholesale Power Contract provides for Tri-State to purchase all its Eastern Interconnection energy and power requirements from Basin Electric. If all six Tri-State Eastern Members elect to terminate their Tri-State Eastern Member Contracts, Tri-State no longer will have any need to purchase energy or power in the Eastern Interconnection. If Tri-State no longer requires energy or power in the Eastern Interconnection, it will have functionally terminated the Eastern Interconnection Wholesale Power Contract. The Commission declined to engage with this argument, however, asserting that "[t]o the extent that Basin's argument is based on a hypothetical in which all six of Tri-State's Eastern Interconnection members withdraw from Tri-State, we decline to address such hypothetical as outside the scope of this proceeding." Complaint Rehearing Order at P 28 (R. 27; J.A. ____). Yet, the fact that the Commission's interpretation could result in termination of the contract is an important aspect of the issue and the result of the Commission's interpretation of the contract. By choosing not to engage with this "hypothetical," the Commission "entirely failed to consider an important aspect of the problem" (*State Farm* at 43)—that its interpretation of section 9 may result in early termination, contrary to the terms of section 14. While Tri-State may "continue to be bound by the [Eastern Interconnection Wholesale Power Contract], notwithstanding Northwest Rural's departure" (Complaint Rehearing Order at P 28

38

(R. 27; J.A. \_\_\_\_)), the same is not true if all Tri-State Eastern Members choose to withdraw from Tri-State.

In addition, this is not actually a "hypothetical," but for the Commission's misreading of the Eastern Interconnection Wholesale Power Contract. Section 9 states Tri-State may not "***take or suffer to be taken any steps*** … to sell, lease or transfer (***or make any agreement therefore***)" its assets unless it pays the "pro rata portion" and complies with the "reasonable terms and conditions as Seller shall require." Complaint, Exh. No. NPD-0013 at 12 (R. 1; J.A. \_\_\_\_) (emphasis added). Under the Commission's interpretation, Tri-State is allowed to take steps to functionally terminate the Eastern Interconnection Wholesale Power Contract, and it can do so without any payment or compliance with "reasonable terms and conditions" prior to the steps being completed. This is not what the contract states. The Commission, however, failed to engage with the entirety of section 9.

### 2. The Commission's interpretation of section 9 is contrary to prior precedent.

The Commission's interpretation of section 9, which it refers to as a "*Shoshone* Amendment" (Order Denying Complaint at P 68 (R. 21; J.A. \_\_\_\_), is arbitrary and capricious and contrary to its prior precedent. The Tri-State Eastern Member Contracts themselves contain a *Shoshone* Amendment, which is almost identical to section 9 of the Eastern Interconnection Wholesale Power Contract. *Compare Tri-State Generation and Transmission Ass'n, Inc.*, 180 FERC ¶ 63,034,

39

at P 226 (2022) (quoting section 8 of the Tri-State Eastern Member Contract) *with* Order Denying Complaint at P 75 (R. 21; J.A. _____) (quoting section 9 of the Eastern Interconnection Wholesale Power Contract). The Commission discussed Tri-State's *Shoshone* Amendment in the Order on CTP Initial Decision (*see* Order on CTP Initial Decision at P 70), finding that it "*does not* directly address the fee that a withdrawing member should pay" and "*does not* apply to member withdrawals." *Id.* at P 228 (emphasis added). Yet, the Commission found that Basin Electric's *Shoshone* Amendment *does* apply to and allow for member withdrawals. Order Denying Complaint at P 78 (R. 21; J.A. _____).

The Commission provided little explanation for this contradiction between its decisions. Instead, it tried to deflect from this contradiction by focusing on the fact that Northwest Rural is not a member of Basin Electric, and its decision in the Order Denying Complaint did not address Tri-State's withdrawal from Basin Electric. *See* Complaint Rehearing Order at P 29 (R. 27; J.A. _____). But the relationship between the parties to the proceedings should not change how the Commission interprets comparable provisions, and the Commission's reasoning did not get to the heart of the issue—that the Commission interpreted identical language differently. The Commission's failure to provide a "reasoned explanation" for its "depart[ure] from established precedent" (*Exxon Mobil Corp. v. FERC*, 35 F.3d 306, 309 (D.C. Cir.

2003) (citing *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995))) results in an arbitrary and capricious decision.

> **3.    The Commission's interpretation of section 9 is inconsistent with the rules of contract interpretation.**

Given the plain language of the all-requirements Eastern Interconnection Wholesale Power Contract, and reading both section 9 and section 14 together, the Commission's interpretation of section 9 is untenable. In general, a contract interpretation will be rejected if it leaves portions of the contract language useless, inexplicable, inoperative, meaningless, or superfluous. *Ball State Univ. v. U.S.*, 488 F.2d 1014, 1016 (Ct. Cl. 1973); *Blake Constr. v. U.S.*, 987 F.2d 743, 746-47 (Fed. Cir. 1993). While section 14 does not allow for early termination, the Commission's interpretation of section 9 does. Thus, the Commission improperly eliminated all meaning from the term provision in section 14 of the Eastern Interconnection Wholesale Power Contract, which provides that the Eastern Interconnection Wholesale Power Contract will remain in effect until 2050 and requires five years' prior written notice of termination to end the contract term. *See Basin Elec. Power Coop.*, 172 FERC ¶ 61,221 at P 86; Complaint, Exh. No. NPD-0013 at 12 (R. 1; J.A. ____). Therefore, the Commission's interpretation of section 9 is arbitrary and capricious and is not the result of reasoned decision-making.

### 4. The Commission inappropriately disregarded evidence regarding the purpose of the Eastern Interconnection Wholesale Power Contract.

The Commission disregarded Basin Electric's arguments that the Commission's interpretation is inconsistent with the purpose of the all-requirements Eastern Interconnection Wholesale Power Contract and rural electric cooperative wholesale power contracts in general. In its answer to the Complaint and in its request for rehearing of the Order Denying Complaint, Basin Electric explained that a cooperative's wholesale power contracts serve as the linchpin of the cooperative's credit and are the foundation of the cooperative's strength, and its main source of revenue. *See* Basin Electric Power Cooperative, Answer of Basin Electric Power Cooperative, Docket No. EL24-93-000 (filed May 8, 2024) at 27-28 (R. 13; J.A. ____-____) ("Basin Electric Answer"); Rehearing Request at 15-16 (R. 22; J.A. ____-____). The wholesale power contracts are also the main asset and assurance that lenders rely on when deciding to lend to Basin Electric for infrastructure improvement and expansion projects. *See* Basin Electric Answer at 27-28 (R. 13; J.A. ____-____); Rehearing Request at 15-16 (R. 22; J.A. ____-____). Basin Electric emphasized that the primary purpose of generation and transmission cooperatives is to provide wholesale electric power to their member cooperatives, who are also their owners, and if the cooperative is unable to secure the revenue needed to operate, the member owners—who are also the ratepayers—are the ones

42

ultimately impacted. *See* Basin Electric Answer at 27-28 (R. 13; J.A. ____-____); Rehearing Request at 15-16 (R. 22; J.A. ____-____).

Yet, the Commission said that it does not need to look at the purpose of the contract to inform its decision because section 9 is unambiguous. *See* Complaint Rehearing Order at P 30 (R. 27; J.A. ____). However, had the Commission considered the purpose of the Eastern Interconnection Wholesale Power Contract—and electric cooperatives' wholesale power contracts in general—it may not have misinterpreted section 9 in the manner that it did. The Commission erred by considering section 9 in a vacuum without consideration of the facts underlying the reason for the contract. Had the Commission considered this information, it would see that interpreting section 9 as a termination provision would undermine the very purpose of the contract. By failing to consider this purpose, the Commission failed to make a "rational connection between the facts found and the choice made." *State Farm* at 43.

### 5. Section 9 does not apply in the case of termination of the Tri-State Eastern Member Contracts.

The plain text of section 9 limits its application to a set of discrete circumstances—reorganization, consolidation, merger, or sale, lease, or transfer its assets. Complaint, Exh. No. NPD-0013 at 9 (R. 1; J.A. ____). Section 9 does not include the circumstance in which Tri-State seeks to prematurely terminate a Tri-State Eastern Member Contract. Indeed, the Eighth Circuit held that the language of

43

section 9 does not authorize premature termination. *See Dakota Energy Coop., Inc. v. East River Elec. Power Coop., Inc.*, 75 F.4th 870, 876 (8th Cir. 2023); *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, No. 4:20-CV-4192-LLP, 2022 WL 1775687, at *4 (D.S.D. Apr. 11, 2022). The Commission's interpretation that section 9 allows for premature termination is thus inconsistent with the plain text of the Eastern Interconnection Wholesale Power Contract and other court precedent.

### C.    THE COMMISSION FAILED TO ENGAGE IN REASONED DECISION-MAKING BY DISMISSING APPLICABLE PRECEDENT.

The Commission failed to engage in reasoned decision-making by choosing not to apply applicable precedent. The Commission's finding that Northwest Rural's request for withdrawal from Tri-State does not result in a breach of the all-requirements Eastern Interconnection Wholesale Power Contract was based in part on the Commission's attempt to distinguish precedent interpreting similar contracts as precluding early termination. *See* Order Denying Complaint at P 82 (R. 21; J.A. ____); Complaint Rehearing Order at P 31 (R. 27; J.A. ____). This precedent, however, is not distinguishable; the Commission simply declined to follow it.

The Commission was incorrect that a Tenth Circuit decision (*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346 (10th Cir. 1989) ("*Shoshone*")) addressing Tri-State's Wholesale Electric Service Contract with Shoshone River Power, Inc. ("Shoshone") is inapplicable

here. *See* Order Denying Complaint at P 81 (R. 21; J.A. ____); Complaint Rehearing Order at P 31 (R. 27; J.A. ____). In *Shoshone*, Tri-State asserted its contract with Shoshone prohibited Shoshone from decreasing its purchasing obligations by selling its assets to a party outside of the Basin Electric cooperative system. *See Shoshone*, 874 F.2d at 1350. There, the Tenth Circuit found Shoshone had an implied obligation not to dispose of its assets because the "fulfillment of Shoshone's contractual undertakings necessarily implie[d] the continuance of Shoshone's system[, o]therwise, the contract could not be carried out in the way anticipated and would be rendered unreasonable." *Id.* at 1360. While the Tenth Circuit's logic applies with full force in the underlying proceeding, Basin Electric does not need to rely on implied contractual obligations, because the Eastern Interconnection Wholesale Power Contract between Basin Electric and Tri-State *explicitly* forbids Tri-State from disposing of its assets in the way Shoshone sought to, as reflected in section 9 and in the clause governing terminations in section 14.

The Commission tried to distinguish the Tenth Circuit's decision in *Shoshone*, but its attempt failed. As the Commission explained (Order Denying Complaint at P 81 (R. 21; J.A. ____)), the court in *Shoshone* considered the difference between (1) "an unavoidable reduction or elimination of Shoshone's requirements," which "would not be a breach of Shoshone's obligation to remain in business and maintain requirements," and (2) Shoshone's situation where it chose to sell assets or member

45

subscriptions, which "cannot qualify as a good faith reduction or elimination of requirements." *Shoshone*, 874 F.2d at 1360. According to the Commission, unlike Shoshone, "Tri-State has confronted an unavoidable reduction of its requirements due to Northwest Rural's attempted withdrawal under Rate Schedule No. 281." Order Denying Complaint at 81 (R. 21; J.A. _____).

The Commission's finding was incorrect—the underlying proceeding is not distinguishable because the breach of the Eastern Interconnection Wholesale Power Contract *is avoidable*. The Commission claimed that "[i]t is ultimately Tri-State's members, and not Tri-State, that decide whether to avail themselves of the [contract termination payment] to terminate their membership in Tri-State." Complaint Rehearing Order at P 31 (R. 27; J.A. _____). But it was Tri-State that voluntarily made the decision to provide its members with the option to exit before the dates specified in their Tri-State Eastern Member Contracts (without Basin Electric's consent). Tri-State was not required to do so; indeed, the Commission has explicitly found that cooperatives are not required to provide for early terminations. *See Basin Elec. Power Coop.*, 172 FERC ¶ 61,221 at P 87. The Commission failed to give weight to the fact that Tri-State also made the decision to modify its contract termination payment methodology to allow the Tri-State Eastern Members to effect an early termination of their Tri-State Eastern Member Contracts, and thus deliberately took steps that would result in a breach of the Eastern Interconnection

46

Wholesale Power Contract, which should not be permitted under the precedent in *Shoshone*. The Commission said it was "not persuaded" by this argument, but does not distinguish Tri-State's voluntary decision to allow members to withdraw from Shoshone's voluntary choice to sell assets or member subscriptions. *See* Complaint Rehearing Order at P 31 (R. 27; J.A. ____). Further, the Commission fails to consider that without Tri-State's decision to allow member withdrawals, Tri-State's members could not "decide whether to avail themselves of the [contract termination payment] to terminate their membership in Tri-State." *Id.* at P 31 (R. 27; J.A. ____).

The Commission's determination also fails to account for the differences between a cooperative's wholesale power contracts with its members and other contracts described by the Tenth Circuit in *Shoshone*. As the Court in *Shoshone* recognized, but the Commission failed to recognize, a cooperative's wholesale power contracts are unique and "must be viewed in conjunction with the entire cooperative system," including "the interdependency of the members," the benefits a member cooperative receives by being part of a cooperative system, "the reasons for entering into the all-requirements contract," "the connection between the contract and [the cooperative's] indebtedness, the role the all-requirements contract plays in the cooperative system, and the obvious need for an intact system and a continued revenue stream." *Shoshone*, 874 F.2d at 1359. As explained in section VIII.B.4, the

Commission failed to consider the purpose of the Eastern Interconnection Wholesale Power Contract when interpreting that contract's provisions.

The Commission did not meaningfully distinguish two additional federal district court cases that held that nearly identical contract language between cooperatives—and, in one case, between Basin Electric member cooperatives—does not permit and, in fact, precludes termination of all-requirements power contracts prior to the termination date. *See Dakota Energy*, 75 F.4th at 875-77; *Marlboro Elec. Coop., Inc. v. Central Elec. Power Coop., Inc.*, No. 4:20-cv-04386 (D.S.C. Mar. 28, 2022) ("*Marlboro*"). In *Dakota Energy*, the Eighth Circuit found that language identical to section 9 of the Eastern Interconnection Wholesale Power Contract did not provide for early buyout and that to read it as doing so ignored the "provision's plain language". *Dakota Energy*, 75 F.4th at 875-77. Specifically, the Court stated:

> But reading this section as providing for a catch-all early-buyout option ignores the provision's plain language. The section addresses transfers of ownership and assets and expressly applies only to East River members engaged in such conduct—none of which Dakota Energy claims to be engaged in here. The section does not mention buying out of or terminating the WPC as a general matter. And the WPC contains no other provision allowing for a buyout, early or otherwise.

*Id.* In *Marlboro*, the United States District Court for the District of South Carolina found that language similar to section 14 of the Eastern Interconnection Wholesale Power Contract was unambiguous and did not allow for termination of a wholesale

power contract without mutual agreement. *See Marlboro*, No. 4:20-cv-04386 (D.S.C. Mar. 28, 2022).

The Commission incorrectly claimed that these cases are distinguishable because "Tri-State is not seeking early termination of the contract," and "Tri-State is not invoking the [Eastern Interconnection Wholesale Power Contract]'s termination provision—section 14—and Northwest Rural's [Tri-State Eastern Member Contract] with Tri-State does allow for early termination." Order Denying Complaint at P 81 (R. 21; J.A. ____); *see also id.* at P 74 (R. 21; J.A. ____); *see also* Complaint Rehearing Order at P 31 (R. 27; J.A. ____). The Commission's recitation of the facts is not accurate. Tri-State effectively is invoking section 14 of the all-requirements Eastern Interconnection Wholesale Power Contract and seeking early termination by creating a situation in which it could eliminate its entire load in the Eastern Interconnection via section 9 of the Eastern Interconnection Wholesale Power Contract, in direct contradiction of the Eighth Circuit's decision in *Dakota Energy*. *See Dakota Energy*, 75 F.4th at 875-77 (holding that the language in section 9 does not permit termination and buyout of a wholesale power contract prior to the termination date of the wholesale power contract). Providing *all* members the ability to exit could result in a complete reorganization of Tri-State, such that it would be unable to fulfill its obligations under the Eastern Interconnection Wholesale Power Contract, which is the very circumstance the *Shoshone* Amendment (*i.e.*, section 9

of the Eastern Interconnection Wholesale Power Contract) was meant to prevent. Indeed, the import of the Commission's decision is that Tri-State would be permitted to terminate all six of its Tri-State Eastern Member Contracts, affecting the entirety of Tri-State's Eastern Interconnection assets, resulting in a complete early termination by Tri-State of the Eastern Interconnection Wholesale Power Contract, contrary to the express language of section 14. The Commission's decision that this situation is distinguishable from past precedent is arbitrary and capricious.

### D.    THE COMMISSION'S GAMESMANSHIP SHOULD BE REJECTED.

The Commission appears to be engaged in a strategy of improperly attempting to insulate its decisions from appellate review. The Commission's "heads, I win; tails, you lose" gamesmanship should be rejected. In Commission Docket No. ER21-2818, when Basin Electric attempted to argue that Tri-State's decision to allow the Tri-State Eastern Members to withdraw from Tri-State resulted in a breach of the Eastern Interconnection Wholesale Power Contract, the Commission rejected the effort because it alleged "what might constitute a breach of the [Eastern Interconnection Wholesale Power Contract] is not before us in this proceeding." *Tri-State*, 187 FERC ¶ 61,101 at P 67. This resulted in Northwest Rural filing its Complaint in the underlying docket (Commission Docket No. EL24-93), in which the Commission did decide that very issue.

In this proceeding on appeal now, the Commission expressly exercised "primary jurisdiction," finding "there is a need for uniformity of interpretation of the type of question raised in the dispute" and that the issue will impact all of the Tri-State Eastern Members. Order Denying Complaint at P 68 (R. 21; J.A. ____). Yet, under its argument in the Motion to Dismiss, the Commission acknowledges its interpretation of the Eastern Interconnection Wholesale Power Contract would not have estoppel effect if there were no ability to appeal. *See* Motion to Dismiss at 8 n.2 (citing *Ala. Mun. Distribs. Grp.*, 312 F.3d 470, 473-74 (D.C. Cir. 2002)). But if that were true, then the entire basis for the Commission to exercise primary jurisdiction in the first place is undermined. The Commission, therefore, should be estopped from contradicting itself in this manner.

Moreover, the Commission is continuing to enforce its interpretation of the Eastern Interconnection Wholesale Power Contract in Commission Docket No. ER21-2818. There, the Commission has ordered Tri-State to allow the Tri-State Eastern Members to exit, and to assume such is not a breach of contract because of its decision in the docket now on appeal. *See* December 5 CTP Order at P 87. The Commission's erroneous decision, therefore, has caused an injury-in-fact to Basin Electric, as it allows the Tri-State Eastern Members to exit Tri-State without it constituting a breach of the Eastern Interconnection Wholesale Power Contract.

## IX.    CONCLUSION

The Commission's interpretation of section 9 of the Eastern Interconnection Wholesale Power Contract was arbitrary and capricious and does not comport with reasoned decision-making. Accordingly, Basin Electric respectfully requests that this Court vacate the Order Denying Complaint and the Complaint Rehearing Order.

Respectfully submitted,

/s/ *Jesse Halpern*
Jesse Halpern
Rebecca L. Shelton
Nicole S. Allen
Anthony F. Blum
Jenna E. Cliatt
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
jhalpern@thompsoncoburn.com
rshelton@thompsoncoburn.com
nallen@thompsoncoburn.com
ablum@thompsoncoburn.com
jcliatt@thompsoncoburn.com

*Attorneys for Basin Electric Power Cooperative*

Dated:  October 6, 2025

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation and word limit of Fed. R. App. P. 32(a)(7) because this document contains 11,858 words, excluding parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1) and including all footnotes and citations,.

I further certify this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Times New Roman 14-point font using Microsoft Word.

Respectfully submitted,

/s/ *Rebecca L. Shelton*
Rebecca L. Shelton
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
rshelton@thompsoncoburn.com

*Attorney for Basin Electric Power Cooperative*

Dated:  October 6, 2025

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25 and D.C. Circuit Rule 25, I hereby certify that on this 6th day of October, 2025, I filed the foregoing document with the Clerk of Court of the U.S. Court of Appeals for the District of Columbia Circuit using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Respectfully submitted,

/s/ *Rebecca L. Shelton*
Rebecca L. Shelton
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
rshelton@thompsoncoburn.com

*Attorney for Basin Electric Power Cooperative*

Dated:  October 6, 2025

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

Administrative Procedure Act, Section 706, 5 U.S.C. § 706............................ A2

Federal Power Act, Section 201, 16 U.S.C. § 824............................................ A3

Federal Power Act, Section 205, 16 U.S.C. § 824d........................................ A6

Federal Power Act, Section 206, 16 U.S.C. § 824e........................................ A10

Federal Power Act, Section 313, 16 U.S.C. § 825*l* ......................................... A14

**Administrative Procedure Act, Section 706, 5 U.S.C. § 706**
  **Scope of review**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

> (1) compel agency action unlawfully withheld or unreasonably delayed; and

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

>> (B) contrary to constitutional right, power, privilege, or immunity;

>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

>> (D) without observance of procedure required by law;

>> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

>> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**Federal Power Act, Section 201, 16 U.S.C. § 824**
   **Declaration of policy; application of subchapter**

**(a) Federal regulation of transmission and sale of electric energy**

It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in this subchapter and subchapter III of this chapter and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States.

**(b) Use or sale of electric energy in interstate commerce**

(1) The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided in paragraph (2) shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a State line. The Commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this subchapter and subchapter III of this chapter, over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter.

(2) Notwithstanding subsection (f), the provisions of sections 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, and 824v of this title shall apply to the entities described in such provisions, and such entities shall be subject to the jurisdiction of the Commission for purposes of carrying out such provisions and for purposes of applying the enforcement authorities of this chapter with respect to such provisions. Compliance with any order or rule of the Commission under the provisions of section 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title, shall not make an electric utility or other entity subject to the jurisdiction of the

Commission for any purposes other than the purposes specified in the preceding sentence.

**(c) Electric energy in interstate commerce**

For the purpose of this subchapter, electric energy shall be held to be transmitted in interstate commerce if transmitted from a State and consumed at any point outside thereof; but only insofar as such transmission takes place within the United States.

**(d) "Sale of electric energy at wholesale" defined**

The term "sale of electric energy at wholesale" when used in this subchapter, means a sale of electric energy to any person for resale.

**(e) "Public utility" defined**

The term "public utility" when used in this subchapter and subchapter III of this chapter means any person who owns or operates facilities subject to the jurisdiction of the Commission under this subchapter (other than facilities subject to such jurisdiction solely by reason of section 824e(e), 824e(f),[1] 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title).

**(f) United States, State, political subdivision of a State, or agency or instrumentality thereof exempt**

No provision in this subchapter shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State, an electric cooperative that receives financing under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.) or that sells less than 4,000,000 megawatt hours of electricity per year, or any agency, authority, or instrumentality of any one or more of the foregoing, or any corporation which is wholly owned, directly or indirectly, by any one or more of the foregoing, or any officer, agent, or employee of any of the foregoing acting as such in the course of his official duty, unless such provision makes specific reference thereto.

**(g) Books and records**

(1) Upon written order of a State commission, a State commission may examine the books, accounts, memoranda, contracts, and records of—

(A) an electric utility company subject to its regulatory authority under State law,

(B) any exempt wholesale generator selling energy at wholesale to such electric utility, and

A4

(C) any electric utility company, or holding company thereof, which is an associate company or affiliate of an exempt wholesale generator which sells electric energy to an electric utility company referred to in subparagraph (A),

wherever located, if such examination is required for the effective discharge of the State commission's regulatory responsibilities affecting the provision of electric service.

(2) Where a State commission issues an order pursuant to paragraph (1), the State commission shall not publicly disclose trade secrets or sensitive commercial information.

(3) Any United States district court located in the State in which the State commission referred to in paragraph (1) is located shall have jurisdiction to enforce compliance with this subsection.

(4) Nothing in this section shall—

(A) preempt applicable State law concerning the provision of records and other information; or

(B) in any way limit rights to obtain records and other information under Federal law, contracts, or otherwise.

(5) As used in this subsection the terms "affiliate", "associate company", "electric utility company", "holding company", "subsidiary company", and "exempt wholesale generator" shall have the same meaning as when used in the Public Utility Holding Company Act of 2005 [42 U.S.C. 16451 et seq.].

A5

**Federal Power Act, Section 205, 16 U.S.C. § 824d**
  **Rates and charges; schedules; suspension of new rates; automatic adjustment clauses**

**(a) Just and reasonable rates --** All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

**(b) Preference or advantage unlawful** – No public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

**(c) Schedules** – Under such rules and regulations as the Commission may prescribe, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

**(d) Notice required for rate changes** – Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the sixty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

A6

**(e) Suspension of new rates; hearings; five-month period** – Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

**(f) Review of automatic adjustment clauses and public utility practices; action by Commission; "automatic adjustment clause" defined** –

    (1) Not later than 2 years after November 9, 1978, and not less often than every 4 years thereafter, the Commission shall make a thorough review of automatic adjustment clauses in public utility rate schedules to examine–

        (A) whether or not each such clause effectively provides incentives for efficient use of resources (including economical purchase and use of fuel and electric energy), and

A7

(B) whether any such clause reflects any costs other than costs which are–

(i) subject to periodic fluctuations and

(ii) not susceptible to precise determinations in rate cases prior to the time such costs are incurred.

Such review may take place in individual rate proceedings or in generic or other separate proceedings applicable to one or more utilities.

(2) Not less frequently than every 2 years, in rate proceedings or in generic or other separate proceedings, the Commission shall review, with respect to each public utility, practices under any automatic adjustment clauses of such utility to insure efficient use of resources (including economical purchase and use of fuel and electric energy) under such clauses.

(3) The Commission may, on its own motion or upon complaint, after an opportunity for an evidentiary hearing, order a public utility to–

(A) modify the terms and provisions of any automatic adjustment clause, or

(B) cease any practice in connection with the clause,

if such clause or practice does not result in the economical purchase and use of fuel, electric energy, or other items, the cost of which is included in any rate schedule under an automatic adjustment clause.

(4) As used in this subsection, the term "automatic adjustment clause" means a provision of a rate schedule which provides for increases or decreases (or both), without prior hearing, in rates reflecting increases or decreases (or both) in costs incurred by an electric utility. Such term does not include any rate which takes effect subject to refund and subject to a later determination of the appropriate amount of such rate.

**(g) Inaction of Commissioners** –
**(1) In general**
With respect to a change described in subsection (d), if the Commission permits the 60-day period established therein to expire without issuing an order accepting or denying the change because the Commissioners are divided two against two as to the lawfulness of the change, as a result of

vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum–

> (A) the failure to issue an order accepting or denying the change by the Commission shall be considered to be an order issued by the Commission accepting the change for purposes of section 825l(a) of this title; and

> (B) each Commissioner shall add to the record of the Commission a written statement explaining the views of the Commissioner with respect to the change.

**(2) Appeal**

If, pursuant to this subsection, a person seeks a rehearing under section 825l(a) of this title, and the Commission fails to act on the merits of the rehearing request by the date that is 30 days after the date of the rehearing request because the Commissioners are divided two against two, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum, such person may appeal under section 825l(b) of this title.

**Federal Power Act, Section 206, 16 U.S.C. § 824e**
**Power of Commission to fix rates and charges; determination of cost of production or transmission**

**(a) Unjust or preferential rates, etc.; statement of reasons for changes; hearing; specification of issues** – Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order. Any complaint or motion of the Commission to initiate a proceeding under this section shall state the change or changes to be made in the rate, charge, classification, rule, regulation, practice, or contract then in force, and the reasons for any proposed change or changes therein. If, after review of any motion or complaint and answer, the Commission shall decide to hold a hearing, it shall fix by order the time and place of such hearing and shall specify the issues to be adjudicated.

**(b) Refund effective date; preferential proceedings; statement of reasons for delay; burden of proof; scope of refund order; refund orders in cases of dilatory behavior; interest –** Whenever the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date. In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint. In the case of a proceeding instituted by the Commission on its own motion, the refund effective date shall not be earlier than the date of the publication by the Commission of notice of its intention to initiate such proceeding nor later than 5 months after the publication date. Upon institution of a proceeding under this section, the Commission shall give to the decision of such proceeding the same preference as provided under section 824d of this title and otherwise act as speedily as possible. If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision. In any proceeding under this section, the burden of proof to show that any rate,

A10

charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant. At the conclusion of any proceeding under this section, the Commission may order refunds of any amounts paid, for the period subsequent to the refund effective date through a date fifteen months after such refund effective date, in excess of those which would have been paid under the just and reasonable rate, charge, classification, rule, regulation, practice, or contract which the Commission orders to be thereafter observed and in force: Provided, That if the proceeding is not concluded within fifteen months after the refund effective date and if the Commission determines at the conclusion of the proceeding that the proceeding was not resolved within the fifteen-month period primarily because of dilatory behavior by the public utility, the Commission may order refunds of any or all amounts paid for the period subsequent to the refund effective date and prior to the conclusion of the proceeding. The refunds shall be made, with interest, to those persons who have paid those rates or charges which are the subject of the proceeding.

**(c) Refund considerations; shifting costs; reduction in revenues; "electric utility companies" and "registered holding company" defined** – Notwithstanding subsection (b), in a proceeding commenced under this section involving two or more electric utility companies of a registered holding company, refunds which might otherwise be payable under subsection (b) shall not be ordered to the extent that such refunds would result from any portion of a Commission order that (1) requires a decrease in system production or transmission costs to be paid by one or more of such electric companies; and (2) is based upon a determination that the amount of such decrease should be paid through an increase in the costs to be paid by other electric utility companies of such registered holding company: Provided, That refunds, in whole or in part, may be ordered by the Commission if it determines that the registered holding company would not experience any reduction in revenues which results from an inability of an electric utility company of the holding company to recover such increase in costs for the period between the refund effective date and the effective date of the Commission's order. For purposes of this subsection, the terms "electric utility companies" and "registered holding company" shall have the same meanings as provided in the Public Utility Holding Company Act of 1935, as amended.[1]

**(d) Investigation of costs** – The Commission upon its own motion, or upon the request of any State commission whenever it can do so without prejudice to the

A11

efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transmission of electric energy by means of facilities under the jurisdiction of the Commission in cases where the Commission has no authority to establish a rate governing the sale of such energy.

**(e) Short-term sales**

(1) In this subsection:

(A) The term "short-term sale" means an agreement for the sale of electric energy at wholesale in interstate commerce that is for a period of 31 days or less (excluding monthly contracts subject to automatic renewal).

(B) The term "applicable Commission rule" means a Commission rule applicable to sales at wholesale by public utilities that the Commission determines after notice and comment should also be applicable to entities subject to this subsection.

(2) If an entity described in section 824(f) of this title voluntarily makes a short-term sale of electric energy through an organized market in which the rates for the sale are established by Commission-approved tariff (rather than by contract) and the sale violates the terms of the tariff or applicable Commission rules in effect at the time of the sale, the entity shall be subject to the refund authority of the Commission under this section with respect to the violation.

(3) This section shall not apply to—

(A) any entity that sells in total (including affiliates of the entity) less than 8,000,000 megawatt hours of electricity per year; or

(B) an electric cooperative.

(4)

(A) The Commission shall have refund authority under paragraph (2) with respect to a voluntary short term sale of electric energy by the Bonneville Power Administration only if the sale is at an unjust and unreasonable rate.

(B) The Commission may order a refund under subparagraph (A) only for short-term sales made by the Bonneville Power Administration at rates that are higher than the highest just and reasonable rate charged by any other entity for a short-term sale of electric energy in the same

geographic market for the same, or most nearly comparable, period as the sale by the Bonneville Power Administration.

(C) In the case of any Federal power marketing agency or the Tennessee Valley Authority, the Commission shall not assert or exercise any regulatory authority or power under paragraph (2) other than the ordering of refunds to achieve a just and reasonable rate.

A13

**Federal Power Act, Section 313, 16 U.S. Code § 825*l***
    **Review of orders**

**(a) Application for rehearing; time periods; modification of order**

Any person, electric utility, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, electric utility, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any entity unless such entity shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

**(b) Judicial review**

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The

A14

finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

**(c) Stay of Commission's order**
The filing of an application for rehearing under subsection (a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.